IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LORI WILKA                                                    PLAINTIFF

v.                          Case No. 4:09-cv-794-DPM

UNITED STATES OF AMERICA                          DEFENDANT

## ORDER

This case is about a decision to move handicapped-accessible parking spots. Lori Wilka worked for the Military Order of the Purple Heart in building 65 at the Veterans Affairs Medical Center in North Little Rock, Arkansas. Wilka had a handicapped parking permit because of her severe asthma. VA Supervisor Gary McClellan and Regional Director William Nicholas both circulated memoranda, between September 2006 and January 2007, informing Wilka that the four handicapped spaces next to building 65 were not to be used by its employees. Those spaces were needed for handicapped patient parking.

When Wilka learned that she needed some more surgery, she asked for an exemption from the new policy. The VA refused. Wilka then went to visit

family before her surgery and fell.  She was forced to use crutches after this fall.  A month later, on 3 January 2007, Wilka fell in the parking lot outside building 65.  She was seriously injured.  She was returning to her job after a doctor's appointment and a work-related errand.  Although all of the four handicapped spaces nearest building 65 were open, Wilka had parked almost three blocks away in keeping with the VA's directives.

Wilka exhausted her administrative remedies within the VA.  28 U.S.C.A. § 2675(a) (West 2006); 28 U.S.C.A. § 2401(b) (West 2006).  She sued the United States under the Federal Torts Claims Act, claiming the VA negligently denied her handicapped parking.  The United States moves for summary judgment for lack of subject matter jurisdiction.  It presses the VA's decision was a discretionary function exempt from the Act, thus entitling the United States to judgment as a matter of law.  FED. R. CIV. P. 56(a).

The material facts are either undisputed or taken in the light most favorable to Wilka.  *Hinsley v. Standing Rock Child Protective Services*, 516 F.3d 668, 671 (8th Cir. 2008).  In this Circuit, Wilka has the burden of proving the discretionary function does not apply.  *Hart v. U.S.*, 630 F.3d 1085, 1089 & n.3 (8th Cir. 2011); *Riley v. U.S.*, 486 F.3d 1030, 1031–33 (8th Cir. 2007).  The

-2-

Court's analysis here is two-fold. The first question is whether the challenged decision by the VA involves an element of choice. *U.S. v. Gaubert*, 499 U.S. 315, 322 (1991). The second question is whether the VA's decision involved the type of discretion Congress intended to protect with the exemption. *Gaubert*, 499 U.S. at 322–23.

**1.** The VA's decision to restrict Wilka's parking was discretionary. "Decisions made at the operational level, as well as decisions made at the policy-planning level, can involve the exercise of protected discretion." *C.R.S. by D.B.S. v. U.S.*, 11 F.3d 791, 795 (8th Cir. 1993). But this discretion is absent if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow[.]" *Ibid.* If the VA's decision violated a statute or regulation, "there will be no shelter from liability because there is no room for choice and the action will be contrary to [established governmental] policy." *Kirchmann v. U.S.*, 8 F.3d 1273, 1276 (8th Cir. 1993) (alteration in original).

Wilka originally pointed to many sources for a mandate: the Americans with Disabilities Act, the Architectural Barriers Act, the Architectural Barriers Act Accessibility Standard, and the Uniform Federal Accessibility Standards.

The American with Disabilities Act does not apply to the VA because it is a federal agency. 42 U.S.C.A. § 12131(1)(A) (West 2005). Wilka has agreed in her briefing, moreover, that the Architectural Barriers Act and the Architectural Barriers Act Accessibility Standard did not apply to the VA's decision either. The Uniform Federal Accessibility Standards and the VA's supplemental Barrier Free Design Guide—the parties now agree—are the applicable regulations. 41 C.F.R. § 102-76.65(a)(1); *Document No. 37-3, at 10*.

The Uniform Federal Accessibility Standards has some mandates about handicapped parking; but the mandates left the VA maneuvering room. The Standards required a number of the spots in each lot to be handicapped-accessible. 41 C.F.R. § 101-19.6, App'x A (2002). "If parking spaces are provided for employees or visitors, or both, then accessible spaces . . . shall be provided in each such parking area" in a certain number depending on the lot's total spaces. 4.1.1(5)(a). For example, a more than 400-space lot like Lot 10 must have nine accessible spots. *Ibid.* The VA could choose, however, to measure its accessible spots "distributed among parking lots, if greater accessibility is achieved." *Ibid.* The Uniform Federal Accessibility Standards do not define "greater accessibility."

-4-

The Standards also put some requirements on location. "In separate parking structures or lots that do not serve a particular building, parking spaces for disabled people shall be located on the shortest possible circulation route to an accessible pedestrian entrance of the parking facility." 4.6.2. A "circulation path" is a "way of passage from one place to another for pedestrians[.]" *Document No. 37-2, at 73.* The Standards do not define the "shortest possible circulation route" or the "pedestrian entrance of the parking facility."

These parking regulations leave room for choice. They gave the VA discretion: it could measure accessible spots by lot or in the aggregate. The Uniform Federal Accessibility Standards's silence about "greater accessibility", moreover, invited the VA to determine the best route. *Demery v. U.S. Dep't of Interior*, 357 F.3d 830, 833 (8th Cir. 2004). As odd as it might seem, choosing to follow the campus-wide calculation did not require the VA to place even one handicap spot in Lot 10. The regulations also allowed the VA to place spots where it thought best. There is no mandate about exact parking location — spaces must be on the shortest possible circulation route,

as defined by the VA. The VA could slide these spots along that route, as it did in Lot 10.

2. The VA, the Court concludes, exercised its discretion poorly. But the record has no evidence creating a genuine dispute of fact about Lot 10's compliance with 4.1.1(5)(a). It complied: the VA had 79 handicap-accessible parking spots campus-wide, *Document No. 37, at 22*, while the Uniform Federal Accessibility Standards required only 28 spaces under the campus-wide calculation. § 101-19.6, App'x A. The Court has reviewed the parking lot diagram, *Document No. 37-1*. It demonstrates the arbitrariness of the VA's decision—Wilka had no handicapped accessible parking within three blocks of building 65. So she was forced to walk for blocks on crutches to get to work. Although the VA's decision provided greater accessibility in total, the VA chose to neglect the accessibility needs of building 65. Wilka was injured by this poor judgment.

3. The Court must presume the VA's action was grounded in policy because the regulations allow discretion. *Demery*, 357 F.3d at 833. The parties all agree that the VA had parking problems in general. Through several depositions, Wilka reconstructed how the VA decided to change Lot 10's

parking.  The VA, it is clear, did not thoroughly consider accessibility in general, but it did consider the need for increased visitor handicapped parking. *Document No. 41, at 4*.  As hospital administrator Raymond Lipin put it, "a lot of our buildings do not have visitors at all.  Okay.  We put our handicap spaces where we have visitors coming in that require handicap spaces." *Document No. 37-2, at 32–33*.

Giving visitors who need handicapped parking priority over employees who need handicapped parking is a policy choice. *Hinsley*, 516 F.3d at 673 n.7. Building 170 — the main hospital — is directly behind building 65.  *Document Nos. 37-1 & 39-9, at 13*.  According to the VA's Barrier Free Design Guide, "the percent of disabled at VA hospitals is much higher than the percent of disabled in the general population used for [Uniform Federal Accessibility Standards]. . . . the percentage of disabled drivers/passengers is much higher in the veterans population." *Document No. 37-3, at 14*.  Like any good employee on a veteran's campus, Wilka acknowledges and approves this policy: "I am happy they have given more parking spots for the veterans. . . . [t]hat's who we're there for and that's what they should be there for."

*Document No. 37-1, at 48.*  "Number one priority.  I do not have a problem with this."  *Document No. 37-1, at 41.*

Changing the spots in front of Wilka's building to accommodate disabled veterans, the core of the VA system's mission, was a matter of protected discretion.  "Congress accepted the possibility that this exemption would sometimes deliver harsh results."  *Hinsley,* 516 F.3d at 674.  On this record, the Court cannot second-guess the VA's decision by recognizing a remedy in tort.  The VA's motion for summary judgment, *Document No. 36,* is granted.  Wilka's case is dismissed with prejudice.

So Ordered.

D.P. Marshall Jr.
United States District Judge

8 July 2011